Larry KOCHER, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 578S95.

Supreme Court of Indiana.

May 4, 1979.

Rehearing Denied July 6, 1979.

Harriette Bailey Conn, Public Defender, Kenneth T. Roberts, Special Asst. Public Defender, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Larry Kocher, Jr., was convicted of kidnapping in violation of Ind.Code § 35–1–55–1, repealed effective October 1, 1977, robbery, and rape following a trial by jury and was sentenced to terms of life imprisonment, twenty years, and ten to twenty years respectively for such offenses. On appeal, appellant raises two issues which we deem necessary to address: (1) whether the failure to instruct the jury that the penalty for kidnapping was life imprisonment, was error and (2) whether error occurred when the trial court denied a motion for mistrial for misconduct by the prosecuting attorney.

(I)

▪ The trial court in its instructions to the jury referring to the offense of kidnapping identified the several elements of it, but did not inform the jury that the penalty provided by statute upon conviction was life imprisonment. Appellant objected to the instruction because of this omission. Ind.Code § 35–8–2–1 enacted in 1927, applicable to the case at bar, since repealed effective October 1, 1977, provides:

"When the defendant is found guilty, the jury . . . must state, in the verdict, the amount of fine and the punishment to be inflicted . . . ."

This requirement is made subject to statutory exception by Ind.Code § 35–8–2–2 and Ind.Code § 35–8–2–3, which are not applicable to a kidnapping charge. This is so because the statute defining kidnapping does not prescribe a penalty in terms of a minimum and maximum time. *Saraceno v. State*, (1931) 202 Ind. 663, 177 N.E. 436. See also *Watson v. State*, (1956) 236 Ind. 329, 140 N.E.2d 109. This inapplicability of the exception to kidnapping is further supported by the specific exclusion of second degree murder from it, as at the time of the enactment of the exception in 1927 second degree murder carried a mandatory life sentence upon conviction as does the kidnapping statute applicable here. Ind.Code § 35–1–35–1 provides that:

"In charging the jury the court must state to them all matters of law which are necessary for their information in giving their verdict."

While the verdict is often prepared by the trial judge for the convenience of the jury, it is, nevertheless, once rendered, the statement of the jury and not that of the judge. It therefore plainly follows that in order to conform to the requirements laid down by the Legislature in these statutes, the jury must be given the statutory penalty by the court where the charge is kidnapping and the penalty is life imprisonment as such penalty is " 'necessary for their information in giving their verdict.' " *Barker v. State*, (1957) 238 Ind. 271, 150 N.E.2d 680. Likewise stemming from the requirements of these statutes is the right of the accused to have the jury so instructed.

The State on appeal relies upon the case of *Currier v. State*, (1901) 157 Ind. 114, 60 N.E. 1023. In such case this Court said:

"In stating to the jury, the statutory definition 'of grand larceny,' the court was not required to say what the penalty for that offense was. The jury could only find by their verdict whether the appellant was guilty or not guilty as charged, and whether he was under thirty years of age. They had nothing to do with the penalty for the crime."

At the time of the *Currier* case, an earlier but similar version of the indeterminate sentence statute was applicable to the trial of a grand larceny case, and such statute exempted the jury from stating in its verdict the punishment in cases to which it applied. Acts 1897, ch. CXLIII, sec. 1. We, therefore, conclude that the basis for the holding in *Currier* that the court was not required to give the jury the penalty for grand larceny and that the jury had nothing to do with the penalty for the crime was the specific application of the indeterminate statute of that day. Such case is not *stare decisis* here because the indeterminate sentence statute is not applicable here, and, therefore, the jury did "have something to do with the penalty" in the case at bar, namely, the obligation to state it in its verdict as required by Ind.Code § 35–8–2–1.

We next turn to determine whether the error of the trial court here was harmless. In *Kelsie v. State*, (1976) 265 Ind. 363, 354 N.E.2d 219, a homicide case, the verdict of the jury did not contain a statement of the penalty to be assessed. This defect in the verdict was deemed an error, however, such error was harmless in light of the court's assessment of the minimum penalty of ten to twenty-five years for second degree murder. That case is, however, not decisive of the harmless error issue here for two reasons. First, the issue presented here, namely, whether it was error to fail to instruct the jury upon the penalty for second degree murder was not met as in *Kelsie* it had not been properly preserved by an appropriate objection. Here such error was preserved and is presented. Second, in *Kelsie*, while no mention is made in the opinion thereof, the avenue was open for trial counsel to inform the jury of the penalty provided for second degree murder during final argument. Such avenue was not open to defense counsel in the trial of the case at bar. At the outset of the trial the judge granted a motion in limine of the prosecution which foreclosed the opportunity to defense counsel to mention that life imprisonment would

result in the event of a conviction for kidnapping. This jury was therefore effectively and totally insulated from the knowledge of the penalty for kidnapping. While the purpose which the Legislature had in mind in requiring that the jury state the penalty of life imprisonment in its verdict when that penalty is the sole one which can lawfully be assessed is not altogether clear, such requirement was assiduously maintained as an essential part of the process by which such penalty might ultimately be imposed. Such requirement cannot be ignored. While death may not be in the sway, life in most of its essential attributes is when a criminal trial can result in confinement in prison for life. Accordingly, under the circumstances of this case, we hold that the error in failing to inform the jury of the penalty of mandatory life for kidnapping was not harmless error.

### (II)

 During final summation the prosecuting attorney called for the maximum penalty to be assessed upon a verdict of guilty of rape, which provoked an objection by trial counsel that the prosecutor was on the verge of commenting upon the failure of appellant to testify. The trial court agreed with defense counsel and the prosecutor continued his argument as follows:

"MR. KEATON: Okay, we have a maximum penalty provided by law and we have a minimum penalty provided by law. It is my opinion and my observation of the evidence only and you are the sole judge of what should be done, that if you find the defendant guilty beyond a reasonable doubt, that you should give him the maximum penalty."

This statement provoked an objection and a motion for mistrial from defense counsel. In effect the trial court admonished the prosecutor and denied the motion for mistrial. It is within the bounds of permissible advocacy and not misconduct for the prosecutor to express his belief in the guilt of the accused during final summation so long as it is clearly stated or implied in the statement that the predicate for the belief is the

evidence presented. As we said in *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193, 196:

"[I]t is not improper for a lawyer to state his conclusion, so long as he does not imply that he has personal knowledge of an accused's guilt or innocence."

*Clark v. State*, (1976) 264 Ind. 524, 348 N.E.2d 27. On this same basis it is not improper for the prosecuting attorney to call for the jury to assess the maximum penalty if they find the accused guilty, or to express his opinion of the appropriate penalty, so long as he does not imply that such opinion is based upon superior or inside knowledge of the case or the accused's background and character. The prosecutor's statement was tied to the evidence heard and was not subject to being interpreted as the product of special knowledge. It was not, therefore, misconduct, and there was no error in denying appellant's motion for mistrial.

The convictions of robbery and rape are affirmed. The conviction for kidnapping is reversed with instructions to grant appellant a new trial.

HUNTER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissents.

I must respectfully dissent from the majority opinion wherein it orders that the conviction for kidnapping be reversed and instructs the trial court to grant appellant a new trial. I am in agreement with the majority opinion in all other provisions.

It is true that a literal translation of our statutes would indicate that the jury was to include in its verdict "the amount of fine and the punishment to be inflicted." It is obvious that the intent of this legislation was to require the jury to include in its verdict the fine and punishment where it is within their province to fix the fine and punishment. This was the rationale underlying the holding of *Currier v. State*, (1901) 157 Ind. 114, 60 N.E. 1023, which indicated that since the jury had nothing to do with

fixing the penalty for the crime, it was therefore not a necessary part of the verdict. When the legislature passed Ind.Code § 35–8–2–1 in 1927, it made exception to those cases where the jury could determine that the defendant would be given a penalty of either a life term or the death penalty. At that time, kidnapping did not carry a fixed penalty of a term of life and so was not made an exception to the statute. Code provisions 35–8–2–2 and 35–8–2–3 did make exceptions where the penalty was fixed by an indeterminate sentence and the jury did not fix the punishment or penalty.

Since the statutes above cited were in effect at the time of sentencing in this case, the majority is correct in holding that the letter of the law required that the verdict form include the amount of the penalty even though the jury had nothing to do with fixing the penalty but had only to determine whether or not the defendant was guilty or not guilty. I therefore agree that the trial court erred by excluding this information from the jury. But this error was harmless in the same way that it was found to be harmless error in the case of *Kelsie v. State*, (1976) 265 Ind. 363, 354 N.E.2d 219. In *Kelsie*, we found that the error was harmless even though the statute in question was one which required the jury to fix the penalty. Second degree murder, under Ind.Code 35–1–54–1, (Burns 1975) provided for alternative sentences of either life or 15–25 years. This Court, in *Kelsie*, held that since the trial court did, in fact, fix the lesser penalty of 15–25 years, there was no harm to the defendant and any error occasioned by not including a statement of the penalty was harmless. Similarly, in the present case, the court improperly failed to have the jury advised of the penalty as provided by law. However, there was no prejudice to the defendant by its failure to do so since the punishment was fixed by law and was not subject to determination by the jury. The defendant cannot assert prejudice based on the supposition that the jury might have determined guilt or innocence on the basis of the severity of punishment. This would have been an improper ground for the jury to use in assessing guilt

or innocence and one we cannot recognize in this argument. I would affirm the judgment of the trial court in all respects.

GIVAN, C. J., concurs.