Jose **TAPIA**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 45S00–8907–CR–593.

Supreme Court of Indiana.

April 16, 1991.

Albert E. Marshall, Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of murder and felony murder. The trial judge imposed an executed sentence of sixty (60) years.

The facts are: In February of 1988, appellant and Curt Bruckner, both twenty years old, had been good friends for years. Bruckner resided at 49 Condit Street in Hammond, Indiana with his father and his 67–year–old grandmother. Appellant and his family resided just three houses down the street from Bruckner. In the mid–1980s, appellant and his family moved to East Chicago; nevertheless, appellant and Bruckner remained good friends and continued to visit one another.

On February 10, 1988, appellant invited Bruckner to stay over, and at approximately 5:00 p.m., appellant picked him up. Later that evening appellant and Bruckner decided to visit Marcella Medina, appellant's former girlfriend, but appellant's mother did not want him to drive the car. However, appellant was able to get the car and left without Bruckner. Appellant did not return that evening.

At 8:00 p.m., appellant arrived at Medina's residence and left at approximately 10:30 p.m. At 1:00 a.m. on February 11, appellant returned to Medina's residence and told her that he had just stabbed Bruckner's grandmother. Appellant then left. Approximately five minutes later, appellant telephoned Medina and again informed her that he had stabbed Bruckner's grandmother. He said that he broke into Bruckner's home believing no one was home. He entered to steal Bruckner's stereo but was confronted by Bruckner's grandmother. Appellant also wanted Medina to tell police officers that he had spent the night with her.

About 1:30 a.m., appellant drove to the home of his friend, Edwin Avilias. Appellant informed him of what had transpired and offered to sell Avilias the stereo. Appellant then returned to Medina's residence, and at 6:00 a.m., Medina's sister went out to appellant's vehicle and noticed stereo components in the back seat. Shortly thereafter, Medina went out to appellant's vehicle where he again informed her that he had stabbed Bruckner's grandmother and planned to flee to Chicago or Indianapolis.

At approximately 3:50 a.m., Bruckner's father returned home from work and found the back door open. Upon entering, he discovered the body of his mother in her bedroom. He noticed Bruckner's stereo components were missing. It was discovered later that a kitchen knife with a twelve-inch blade, money, a bottle of cologne, and .35 millimeter camera were missing.

At 8:00 a.m., appellant picked up Avilias who noticed a stereo behind the driver's seat. He again informed Avilias that he had killed Bruckner's grandmother and told him of the events that led up to the killing. On the afternoon of the murder, Medina gave two statements to the Hammond police regarding what appellant had told her.

On February 15, 1988, appellant surrendered to the police in Indianapolis and later was transported to Hammond. Upon arriving at the police station, appellant's clothing was confiscated for laboratory analysis. Lisa Black, a forensic serologist, analyzed the bloodstains on appellant's clothing and determined that the bloodstains were inconsistent with appellant's blood type but were consistent with the victim's. An autopsy performed by Dr. Young Kim revealed that the victim was stabbed twenty-four times, and he estimated that the time of death was between 10:00 p.m. and 12:00 midnight. He concluded the victim died of multiple stab wounds.

■ Appellant first contends there is not sufficient evidence to support his convictions. This Court will not weigh evidence or judge the credibility of witnesses. *Butler v. State* (1989), Ind., 547 N.E.2d 270.

Appellant contends there was "scant" physical evidence and contradictions in testimony presented. He also contends that the entire case was based on circumstantial evidence.

The testimony of Bruckner shows that appellant was familiar with the victim's home and knew Bruckner was not at home. Bruckner and his father identified items missing from their home. The testimony of Margaret Medina and Edwin Avilias showed appellant had stereo components in the back seat of his car, and the witnesses also testified that appellant admitted the stabbing. The testimony of the serologist stated that the blood on appellant's clothing was consistent with the victim's blood. The testimony of Dr. Young Kim described numerous bruises and "defense" wounds on the victim's body. We find the evidence ample to support the verdict.

Appellant contends the trial court erred when he was sentenced for murder and felony murder.

■ Appellant argues that only one murder occurred. The trial court cannot sentence appellant on both convictions, citing *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731. We agree.

■ Appellant contends the trial court committed reversible error and abused its discretion when it imposed an executed sentence of sixty (60) years. The decision to impose an enhanced sentence is a matter within the sound discretion of the trial court. In so doing the court is required to state its reasons, identifying the aggravating circumstances. *Slayton v. State* (1987), Ind., 510 N.E.2d 1343.

■ The finding of mitigating circumstances is within the trial court's discretion and is not mandatory. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. In *Henley v. State* (1988), Ind., 522 N.E.2d 376, we held that this Court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

■ In the instant case, the trial court identified the following aggravators: 1) the victim was 67 years old; 2) the victim sustained 24 stab wounds; 3) the murder occurred in the home of the victim; and 4) the court believed that anything less than the maximum sentence would tend to depreciate the severity of the crime. The trial court did not abuse its discretion in sentencing appellant.

Appellant contends the trial court committed reversible error in denying his motion for a mistrial. He claims the prosecutor committed misconduct during his closing rebuttal by commenting on appellant's silence before police officers.

Appellant first raised the issue of his silence during cross-examination of Officer Summers. During this cross-examination, the officer was asked what had been done to determine if anyone else was involved in the crime. The officer stated that he had attempted to question appellant on that subject but appellant refused to make any statement.

On redirect examination, the prosecuting attorney elaborated on the officer's statement that on the trip from Indianapolis to Hammond he had spent three hours with appellant, and he was unable to persuade appellant to make any statements.

During the State's closing argument, the prosecutor reminded the jury that they had heard that appellant had every opportunity to make a statement to the police but had refused to do so. At this point, the court admonished the jury that the statement by the prosecutor was improper, that appellant had every right to remain silent, and that his doing so was not to be held against him. The court went so far as to separately question each individual juror to make sure that the prosecutor's comment would not be held against appellant.

■ Whether to grant a mistrial is within the trial court's discretion, and on review, great deference is accorded to the trial judge as he is in the best position to gauge surrounding circumstances of an event and its impact on the jury. *Reno v. State* (1987), Ind., 514 N.E.2d 614.

* Now codified at I.C. 35–38–1–7.1.

■ In *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349, this Court discussed circumstances where a line of questioning and comment upon a defendant's post-arrest silence after *Miranda* warnings may be held harmless error even though it violates *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. Whether such a violation of *Doyle* is harmless error involves reviewing the following: 1) the use to which the prosecution puts the post-arrest silence; 2) who elected to pursue the line of questioning; 3) the quantum of other evidence indicative of guilt; 4) the intensity and frequency of the reference; and 5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

We find that the trial court took proper steps to correct any error and further find that the court did not err in denying appellant's motion for a mistrial.

This cause is remanded to the trial court to merge the convictions of murder and felony murder and to impose only one sentence. In all other respects the trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, J., concur.

DeBRULER, J., concurs and dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring and dissenting.

The jury recommended that Tapia not receive the penalty of death for his crime, and the trial judge concluded as well that death was not appropriate. In such circumstances, the duty is imposed upon the judge to sentence to a term of years pursuant to I.C. 35–50–2–3, applying the criteria mandated by the Legislature in I.C. 35–38–1–7,* and setting forth in writing the reasons for the sentence selected in accordance with I.C. 35–38–1–3, in three groups as follows:

A sentencing statement must contain three elements. First, the statement

must identify all the significant mitigating and aggravating circumstances. Second, it must state the specific reason why each circumstance is considered to be mitigating or aggravating. Third, it must balance the mitigating and aggravating factors. *Dumbsky v. State* (1987), 508 N.E.2d 1274, 1278. Here, the sentencing statement sets forth four aggravating circumstances, all of which have support in the record, but refers not at all to evidence of mitigating factors. The State impliedly concedes in its brief that appellant's age and lack of a prior record are mitigating factors in this case, but argues that they are "not mitigating enough to offset the serious aggravating circumstances of this case...."

Effective October 1, 1977, the Legislature abolished jury sentencing upon the premise that sentencing by a judge using sentencing criteria and requiring written reasoning is more rational and more just. *Debose v. State* (1979), 270 Ind. 675, 389 N.E.2d 272. At the heart of this premise stand the statutory steps required of the sentencing judge, and the requirement that the sentencing judge follow the statutory steps and memorialize each one is not and does not become, by reason of the existence in the particular case of many weighty aggravating circumstances, a futile or pointless judicial obligation. The requirement stands as a guard against arbitrary and capricious sentencing and provides a rational basis for appellate review. *Dumbsky*, 508 N.E.2d at 1278. The sentencing statement in the present case does not satisfy this dual purpose. This Court knows and appreciates that the sentencing function is a difficult and arduous one, yet this Court cannot shut its eyes when a judge, no matter how experienced, takes a short cut in sentencing. I would therefore set aside the order and remand with instructions to comply with the felony sentencing statute as construed by this Court.

DICKSON, J., concurs.